## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THOMAS TRUPPO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-01953-TWP-MG |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Norfolk Southern Railway Company ("Norfolk Southern") (Filing No. 37). Plaintiff Thomas Truppo ("Truppo") initiated this action against his employer, Norfolk Southern, asserting a claim for violation of the Federal Employers Liability Act ("FELA") (Filing No. 1). For the reasons explained below, Norfolk Southern's Motion is **granted**.

## I.        BACKGROUND

The following facts are not necessarily objectively true; the Court, as required by Federal Rule of Civil Procedure 56, presents them in the light most favorable to Truppo as the non-moving party and resolves all factual disputes in his favor. *See Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Truppo started working for Norfolk Southern in 1976 and had been employed as a locomotive engineer since 1988 (Filing No. 38-1 at 1; Filing No. 38-2 at 3). On May 25, 2016, Truppo—who was tasked with performing daily inspections of locomotives, including their sanitation compartments (*i.e.*, restrooms), for defects—inspected a locomotive before it was used to move a train from Tipton, Indiana, to Frankfort, Indiana (Filing No. 38-2 at 13, 14, 16, 42).

Following this inspection, Truppo wrote "nothing" on the locomotive inspection report. *Id.* at 17–18. Thereafter, he and conductor Mike Fetterhoff departed on the locomotive. *Id.* at 15; Filing No. 38-3 at 1.

On its way to Frankfort, the locomotive stopped in Hillisburg, Indiana (Filing No. 38-3 at 1). During this stop, Truppo needed to "use the bathroom." (Filing No. 38-2 at 23.) But because the sanitation compartment was "filthy" and in "horrible" condition with the toilet "full," Truppo decided to dismount the locomotive to relieve himself "on the ground outside the locomotive." *Id.* at 24, 26. As he finished backing down the ladder to disembark the locomotive, Truppo's left foot slipped on the shifting ballast supporting the tracks,[1] and his right hand and wrist struck one of the ladder steps. *Id.* at 29–30, 28, 32; Filing No. 38-7 at 1. Before his fall, Truppo had taken "no exception" to the footing condition of the ballast and did not notice anything defective about the ladder or the steps (Filing No. 38-2 at 30, 28–29; Filing No. 38-3 at 1). Though "uncomfortable" following the stumble, Truppo was still able to relieve himself and then carry on working the rest of his shift, refusing medical treatment at the conclusion of his workday (Filing No. 38-2 at 32, 34–36; Filing No. 38-3 at 1, 2). Ultimately, however, the condition of Truppo's hand worsened, and he eventually filed suit against Norfolk Southern for "violation of FELA." (Filing No. 1 at 3.) Norfolk Southern, in turn, moved for summary judgment under Federal Rule of Civil Procedure 56 (Filing No. 37).[2]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[1] Ballast, in this context, is "the layer of crushed rock on which the railroad track is laid." *Kansas City S. Ry. Co. v. Koeller*, 653 F.3d 496, 501 (7th Cir. 2011).

[2] Though the parties quibble over deadlines for their filings (*see* Filing No. 44 at 2–4; Filing No. 45 at 2), the Court will consider the arguments contained in all the briefing.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.    DISCUSSION

In his Complaint, Truppo seeks to recover damages for injuries sustained to his wrist when he slipped and fell in the process of dismounting the Norfolk Southern locomotive on May 25, 2016. Because the Railroad failed to keep the locomotive's bathroom sanitary, he decided to dismount the locomotive in search of different facilities and while doing so, stepped onto a shifting ballast, causing him injury. Truppo sues Norfolk Southern for "violation of FELA." ([Filing No. 1 at 3](.).)

FELA was enacted "to provide a remedy to railroad employees injured as a result of their employers' negligence." *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 775 (7th Cir.

2000) (citing *Kossman v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1035 (7th Cir. 2000)). Under the statute,

> Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. This statutory language creates "a general duty to provide a safe workplace." *McGinn v. Burlington N. R.R. Co.*, 201 F.3d 295, 300 (7th Cir. 1996). It "neither prohibits nor requires specific conduct by a railroad." *Waymire*, 218 F.3d at 775. To recover under FELA, a plaintiff must prove the elements of negligence, including duty, breach, foreseeability, and causation. *Fulk v. Ill. Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994).

In addition to common law claims of negligence, a violation of the Locomotive Inspection Act ("LIA")—which establishes safety standards for locomotives and their parts to be "in proper condition and safe to operate without unnecessary danger of personal injury," 49 U.S.C. § 20701(1)—is negligence *per se* under FELA. *See Coffey v. Ne. Ill. Reg'l Commuter R.R. Corp. (METRA)*, 479 F.3d 472, 477 (7th Cir. 2007) (stating that a railroad employee claiming a violation of the LIA "is required to prove only the statutory violation and thus is relieved of the burden of proving negligence") (quoting *Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166 (1969)). The Federal Railroad Administration has issued regulations concerning locomotive safety standards and inspections to implement LIA. *See* 49 C.F.R. §§ 200 *et seq.*

Here, Truppo offers theories for his FELA claim under both common law negligence and negligence *per se* under LIA. For this first contention, Truppo maintains that Norfolk Southern 's decision to use "large unstable ballast" at the site of his fall was unreasonable (*see* Filing No. 41

4

at 16).[3] He argues that Norfolk Southern should have used "smaller, more stable ballast" because the area was one where Norfolk Southern should have "expected . . . foot traffic." *Id.* To establish a breach of a railroad's general duty to provide a safe workplace, a plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm. *McGinn*, 102 F.3d at 300; *see also Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998). Additionally, because liability is limited to those dangers that are reasonably foreseeable, the plaintiff must show that the employer had actual or constructive notice of the condition. *Williams*, 161 F.3d at 1062–63. In other words, a plaintiff must "identify a dangerous condition of which the defendant *was aware*." *Holbrook v. Norfolk S. Ry. Co.*, 414 F.3d 739, 743 (7th Cir. 2005) (emphasis added).

The Court concludes that Truppo has failed in establishing negligence based on ballast size. Aside from his own broad pronouncements about the proper size of ballast to be used (*see, e.g.*, Filing No. 42 at 4; Filing No. 41 at 9–10), Truppo has failed to present evidence from which a reasonable jury could conclude that Norfolk Southern had actual or constructive notice that the use of the larger ballast created a hazardous condition for workers stepping off a locomotive. *Williams*, 161 F.3d at 1063. In fact, even after he fell, Truppo did not complain about the size or condition of the ballast (Filing No. 38-2 at 30, 39; Filing No. 38-3 at 1–2). Because Truppo has not shown that Norfolk Southern "was aware" of any dangerous condition concerning the ballast, this theory that could create liability under FELA must fail. *See Holbrook*, 414 F.3d at 743.[4]

---

[3] In his Complaint, Truppo only mentions "ballast" once—to indicate that it was "shifting" when he stepped down from the locomotive (Filing No. 1 at 2). It seems a stretch to the Court, then, that he has sufficiently alleged a negligence theory concerning "ballast" size. While Truppo argues this contention in his responsive briefing, "a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (citation omitted). But because Norfolk Southern has addressed this argument at length (even starting in its lead brief), the Court will resolve this contention as well.

[4] The parties also quarrel over the applicability (and preclusive/preemptive effect) of federal regulations to the ballast-size argument (*see* Filing No. 44 at 8–10, 14–16; Filing No. 45 at 3–7). But because the Court resolves this theory of negligence on different grounds, it need not reach these issues.

Second, to support his LIA claim (which would establish negligence *per se* under FELA), Truppo points to regulations concerning general and servicing requirements for sanitation compartments, which chiefly require adequate ventilation, sanitation, and functionality, a working toilet facility, and no blockages preventing bowl evacuation (Filing No. 41 at 13–16; *see* 49 C.F.R. §§ 229.137, 229.139). Yet "the duty to remedy an unsanitary condition . . . arises only at the daily inspection." *Edwards v. CSX Transp. Inc.*, 821 F.3d 758, 761 (6th Cir. 2016). As the regulation instructs, "if the railroad determines *during the daily inspection* . . . that a locomotive toilet facility is defective or is unsanitary, or both, the railroad shall not use the locomotive in the lead position. 49 C.F.R. § 229.137. In other words, once a locomotive sanitation compartment is deemed sanitary at the daily inspection, a railroad is relieved of its duty "until the next daily inspection bec[o]me[s] due." *Edwards*, 821 F.3d at 761.

The Court, again, concludes that Truppo has failed to establish an underlying claim that could lead to FELA liability. Not only was the sanitation compartment deemed sanitary at the immediately prior daily inspection, it was deemed sanitary at that inspection *by* Truppo. In his testimony, Truppo agreed that it was his "job to inspect the locomotive before [he] took it and note any defects," *see* 49 C.F.R. § 229.21(c) ("Each carrier shall designate qualified persons to make the inspections required by this section"), and, on the day in question, Truppo made no report of any issues concerning the sanitation compartment (Filing No. 38-2 at 13, 16, 17–18, 19). Only later did he choose to exit the locomotive to relieve himself because the "facilities" were "bad," "filthy," and "horrible." *Id.* at 24. But, as noted above, Norfolk Southern's duty was discharged after Truppo's daily inspection. And the same goes with any *prior* reports of unsanitary conditions—these reports lost pertinence by intervening silence on the conditions. Even so, Truppo's earlier "report"—sent two days before the accident and informally through a string of

text messages—was hardly conclusive, indicating that the sanitation compartment was "ok for now or until you get something else." ([Filing No. 43-5 at 5](#).) Because Norfolk Southern, through Truppo, discharged its duty upon daily inspection of the sanitation compartment, no underlying violation of the LIA occurred.

But even if the Court assumes a violation of LIA, Truppo must still establish that this violation was a cause of the injury. *See Coffey*, 479 F.3d at 477 ("[T]he plaintiff is required to prove only the statutory violation and thus is relieved of the burden of proving negligence. He still has to prove a causal relation between a violation and the injury for which he is suing.") (quotation and citation omitted). Once negligence *per se* has been established, a relaxed standard applies to the causation inquiry. *Id.* (noting that the injury need only be caused "in whole or in part" by the violation). This "more lax" standard

> eliminates a number of traditional defenses such as contributory negligence, the fellow-servant rule, and assumption of risk. Under FELA, railroads are liable if carrier negligence played any part, even the slightest, in producing the injury. A plaintiff's burden under FELA is thus significantly lighter than in an ordinary negligence action. A jury verdict in a FELA action can be set aside only if there is a complete absence of probative facts to support the jury's conclusion.

*Lynch*, 700 F.3d at 911 (quotations and citations omitted). Though the Supreme Court has consistently recognized this relaxed standard, it has also clarified that "common sense" should still prevail when reviewing evidence in these cases:

> [J]uries would have no warrant to award damages in far out "but for" scenarios. Indeed, judges would have no warrant to submit such cases to the jury. *See Nicholson v. Erie R. Co.*, 253 F.2d 939, 940–941 (C.A.2 1958) (alleged negligence was failure to provide lavatory for female employee; employee was injured by a suitcase while looking for a lavatory in a passenger car; applying *Rogers*, appellate court affirmed lower court's dismissal for lack of causation); *Moody v. Boston and Maine Corp.*, 921 F.2d 1, 2–5 (C.A.1 1990) (employee suffered stress-related heart attack after railroad forced him to work more than 12 hours with inadequate breaks; applying *Rogers*, appellate court affirmed grant of summary judgment for lack of causation).

*CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703–04 (2011) (quotations and citations omitted).

Truppo's claim under LIA (and the attendant regulations) falters here as well. This matter uncannily resembles the *Nicholson* case the Supreme Court cited favorably in *McBride*. In *Nicholson*, a female railroad employee sustained injuries after a passenger struck her "with something like a suitcase" as the employee was in a stopped railroad car to use a women's restroom when the railway-adjacent (and male-dominated) shop in which she worked did not have that facility. *Nicholson*, 253 F.2d at 940. While noting that, under FELA, "the negligence need not be the proximate cause of the injury," the Second Circuit reasoned that causation was "lacking" even under this relaxed standard:

> Speaking literally it cannot be denied that in the case at bar failure to supply toilet facilities 'played a part' in producing plaintiff's injury. If defendant had supplied indoor toilet facilities plaintiff would not have been where the passenger's baggage struck her. It is not enough, however, that the injury would not have happened 'but for' the negligence. Assume that plaintiff here, because of the delay incident to her long way around via the car's lavatory, took a train that arrived at Bloomfield fifteen minutes later than the one which she would have taken if toilet facilities had been furnished at her place of employment and that she was struck by an automobile in the street in Bloomfield on her way home from the station. She would have escaped injury 'but for' the failure to supply toilet facilities, yet the causation certainly would not even meet the modest requirements of the terms of the F.E.L.A. The fault would be too far removed both in space and time from the injury.

*Nicholson*, 253 F.2d at 940–41. The *Nicholson* court concluded, "the cause and effect here were too far removed from one another in space and time to satisfy the requirements of the F.E.L.A." *Id.* These facts, in the words of the *McBride* court, represented a "far out 'but for' scenario[]." 564 U.S. at 704.

The same goes here: The cause—the unsanitary condition of the on-board toilet—is too far removed in time and space from the effect—Truppo's slip and fall injury as he dismounted the train—to satisfy the elements of FELA.[5] Though Norfolk Southern notes the similarity between

---

[5] To be sure, the Sixth Circuit rejected comparison to *Nicholson* in a similar case because the plaintiff in *Nicholson* "was off-duty when the incident occurred," " 'was on defendant railroad property but was not working at her workplace when she was injured," and her "injury was proximately caused by the action of an intervening third-party." *Szekeres*

8

this case and *Nicholson* in both its lead and reply briefs (*see* Filing No. 38 at 16–17; Filing No. 44 at 19), Truppo fails to even acknowledge (let alone distinguish) that analogous case in either his response or surreply briefs. Instead, he focuses on several other mid-century cases where the Supreme Court generously (at least as far as the plaintiff was concerned) applied FELA's lax causation standard (*see* Filing No. 41 at 10–12 (discussing *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108 (1963); *Lavender v. Kurn*, 327 U.S. 645 (1946); *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29 (1944))). Yet these opinions do nothing to separate the factual similarities between *Nicholson* and the case at hand. Because Truppo's claim must fail (since he has shown neither negligence or a LIA violation nor causation under even the "modest requirements" of FELA), summary judgment is **granted**.

## IV.     CONCLUSION

For the preceding reasons, Norfolk Southern's Motion for Summary Judgment is **GRANTED** (Filing No. 37). Truppo's claim is **dismissed with prejudice**, and all other pending motions are **denied as moot**. The final pretrial conference and jury trial are **vacated**. Final Judgment will issue under separate order.

**SO ORDERED.**

Date:   7/1/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

---

*v. CSX Transp., Inc.*, 731 F.3d 592, 600 (6th Cir. 2013). *McBride*, however, made no mention of these circumstances as animating the Court's decision to include *Nicholson* as an example of a "far out" case, and neither has the Seventh Circuit.

Distribution:

John C. Duffey
STUART & BRANIGIN LLP
jcd@stuartlaw.com

Heather L. Emenhiser
STUART & BRANIGIN LLP
hle@stuartlaw.com

Barry L. Loftus
STUART & BRANIGIN
bll@stuartlaw.com

Scotty N. Teal
STUART & BRANIGAN
snt@stuartlaw.com

Marc T. Wietzke
FLYNN & WIETZKE, PC
MWietzke@FELAattorney.com